(122 App. Div. 523.)

BRADFORD v. BANKERS BROS. CO.

(Supreme Court, Appellate Division, First Department. December 6, 1907.)

MASTER AND SERVANT—INJURIES TO SERVANT—EVIDENCE—NEGLIGENCE.

In an action for the death of plaintiff's intestate, while in the employ of defendant, caused by the fall of part of a trapdoor of an elevator shaft, evidence examined, and *held* not to show that defendant had control of the building or its appliances, which would make it chargeable with negligence in respect thereto.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 954–977.]

Appeal from Trial Term.

Action by Emily Bradford, as administratrix of Charles Bradford, deceased, against Bankers Bros. Company. From a judgment for plaintiff and an order denying a motion by defendant for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles M. Weeks, for appellant.
Edward J. Gavegan, for respondent.

INGRAHAM, J. This action was brought to recover damages sustained by the next of kin of the plaintiff's intestate by reason of his death. The complaint alleges that the deceased was in the employ of the defendant, and that the defendant was in possession and control of a certain building known as No. 141 West Thirty-Eighth street, together with the elevator therein and all other parts of said building; that on the 20th day of June, 1905, while the plaintiff's intestate was in the basement of said building engaged in lifting materials, the property of the defendant, on the aforesaid elevator, by reason of the negligence of the defendant, its agents, servants, or employés, and by reason of the neglect of duty in the said several respects, a part or portion of said elevator or trapdoor thereof or other material was suddenly and without any warning to the said plaintiff's intestate dropped down through the elevator shaft, striking this plaintiff's intestate on the head with such force and violence as to cause his death immediately thereafter. Upon the trial it was proved that the defendant leased the premises in question for the term of three years from the 7th of October, 1902, and entered into possession of said premises under that lease; that on the 14th of January, 1905, the defendant leased the premises to another for a term beginning upon the date of the lease, namely, the 14th of January, 1905, and ending on the 7th day of October, 1905, the date of the expiration of the defendant's lease; that by an instrument dated the same day the defendant sold to its lessee certain personal property then upon the said premises, which included one elevator, two gas engines, two electric motors, and various other machinery and personal property, and at the same time there was executed an instrument whereby it was provided that the defendant was to have "the following rights with respect to the premises at 141–143 West Thirty-Eighth street which have this day been sublet by Bankers Bros. Company and

others to the United States Agency of the Michelin Tire Company: (1) The right to occupy until February 1, 1905, the small inclosed office on the second floor, that being an office about 8x10 feet. (2) The right to leave seven machines which are now on the premises in dead storage on the premises until February 1, 1905." Under these instruments the possession of the premises was turned over to the Michelin Tire Company on January 15, 1905. On the morning of January 20, 1905, the deceased, with other employés of the defendant, went to the premises in Thirty-Eighth street to remove certain goods and machinery that belonged to the defendant. Part of this machinery was in the basement, and part upon the ground floor. The deceased and other employés of the company were in the basement putting goods of defendant on the elevator, when a crash was heard. The foreman, who was on the street floor, called, "Look out!" but the deceased was struck on the head with a board coming down through the elevator shaft. This board was part of a trapdoor that had been used to protect the floor on the upper story. At the time of the accident, most of the defendant's property was out of the building, and the men were engaged at this time in getting out the last of what was left from the basement. The Michelin Tire Company had commenced to move in on the 14th of January, and on the 15th took charge of the building. The defendant moved out on the 14th. The Michelin Company had charge of the elevator at the time of the accident which was run there by their employé, and the defendant had nothing to do with either the elevator or the building, and the allegation of the complaint that the defendant was in possession and control of the building or elevator was entirely disproved.

The evidence of the defendant quite satisfactorily established that this trapdoor was tied in this position by the Michelin Tire Company's employés on the morning of the accident. The witnesses who testified that the trapdoor caught and was not tied were those in the basement, while those who actually tied up the trapdoor, and who examined it immediately afterward, established that the elevator was tied in this position by the employés of the Michelin Company. An examination of this trapdoor after the accident showed that one side of it was tied, and that it had fallen away upon the other side. The evidence is uncontradicted that the rope which was used to tie up the trapdoor had been brought to the premises by the Michelin Company after the defendant had relinquished possession. It is quite clear that there was no evidence to justify the finding that the defendant was guilty of negligence. It had delivered possession of the premises to a new tenant, had parted with all its interest in the elevator and machinery which had been delivered to the Michelin Company, and the defendant had no control of the premises or authority to interfere with the operation of the machinery, and neither claimed nor exercised any control over it. The fact that the employés of the Michelin Company for their own purposes created the condition which was the cause of the accident is proved by a great preponderance of the evidence. The defendant was not chargeable with knowledge of the methods that had been adopted by the Michelin Company in the control and use of this ele-

vator, or with a duty to examine the elevator to see whether or not it was safe. There is no question of furnishing a safe place to work, for the place at which the deceased was at work was not furnished by the defendant. The cause of the accident itself is unexplained. The most probable cause would appear to be that the trapdoor was only securely tied on one side, and the weight of the iron plate forced off the boards from the unsecured side. Assuming that the principle of res ipsa loquitur would justify the conclusion that there was a negligent operation or management of the elevator, this would be evidence only against those in possession of or in charge of the building or elevator, and not against a third person who had no duty in relation to either.

The defendant and its employés were mere licensees removing from the building material which belonged to the defendant, but with no control over the building itself or its appliances, and for an accident caused by the negligence of the Michelin Company the defendant is not responsible. The plaintiff has recovered from the Michelin Company, who was guilty of negligence that caused deceased's death, and there is nothing to charge the defendant with negligence or liability.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.